IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

GOOGLE LLC,

Petitioner,

v.

FORTRESS INVESTMENT GROUP,
FORTRESS CREDIT CO. LLC, and CF
UNILOC HOLDINGS LLC,

Respondents.

C.A. No.

(United States District Court for the Eastern
District of Texas, Case Nos. 2:18-cv-00491–
93, 496–97, 499, 501–04-JRG-RSP (E.D.
Tex.)

**MEMORANDUM OF LAW IN SUPPORT OF GOOGLE LLC'S MOTION TO COMPEL
FORTRESS INVESTMENT GROUP, FORTRESS CREDIT CO. LLC, AND CF UNILOC
HOLDINGS LLC TO COMPLY WITH SUBPOENAS ON AN EXPEDITED BASIS**

Pursuant to Fed. R. Civ. P. 37 and 45, Petitioner Google LLC ("Google") moves[1] for an

order compelling Fortress Investment Group, Fortress Credit Co. LLC (together, "Fortress"), and

CF Uniloc Holdings LLC ("CF Uniloc") (collectively, the "Subpoenaed Entities"), to comply, on

an expedited basis, with Google's subpoenas served on January 22, 2020 seeking specific

information.

After discussions between the parties, Google request six things:

1.    All Documents and Communications between You and any other party, Including
      any Uniloc Entity or Fortress Entity, Regarding the Uniloc 2017–Google
      litigations, any litigation involving any Asserted Patent or Related Patent, or any
      potential patent litigation against Google.

2.    All Documents and Communications Concerning any negotiations regarding the
      sale, transfer, assignment, or licensing of any rights to the Asserted Patents, Related
      Patents, or any patent portfolio owned or controlled by any Uniloc Entity.

---

[1]  Consistent with Rule 37(a)(1) of the Federal Rules of Civil Procedure, Google made a reasonable
effort to reach agreement with the Subpoenaed Entities on the matters discussed herein before
filing this Motion, but no agreement could be reached.

3.  All agreements and Documents Concerning such agreements that convey any right to any Asserted Patent or Related Patent, Including to the ownership, assignment, or conveyance of any interest in any Asserted Patent or Related Patent, or in any litigation or enforcement involving such patents.

4.  All Documents and Communications Concerning the licensing of or any proposed or actual settlement of any litigation, prospective litigation, or disputes involving the Asserted Patents or any Related Patents.

5.  Documents sufficient to identify each Person having a financial or pecuniary interest in the outcome of Uniloc 2017–Google litigations, as well as the type, nature, percentage, and amount of each Person's interest.

6.  Privilege log for documents and communications for which the Subpoenaed Entities asserted protection from discovery.

## I.    INTRODUCTION

This matter arises in connection with *Uniloc 2017 LLC v. Google LLC*, Nos. 2:18-cv-00491–93, 496–97, 499, and 501–04-JRG-RSP (E.D. Tex.).[2,3] The subpoenas, attached as Exhibits 1, 2, and 3, were issued in connection with the above-cited cases by presiding Judge Rodney James Gilstrap of the United States District Court for the Eastern District of Texas. In that court, Uniloc 2017 LLC ("plaintiff Uniloc 2017") sued Google for alleged patent infringement in approximately 15 separate cases,[4] with the above-cited cases currently progressing toward trial. The Subpoenaed Entities are interested nonparties—related to plaintiff Uniloc 2017 and to each other—who possess

---

[2]  These cases are active and not stayed. Other cases in the Uniloc 2017–Google litigation, however, are currently subject to a 30-day stay until March 15. Those cases include Nos. 2:18-cv-548, -550–553-JRG-RSP (E.D. Tex.).

[3]  As Google indicated in its cover letter attached to the subpoenas, Google intends to seek a deposition from the Subpoenaed Entities in addition to the production of documents. Google emailed a courtesy copy of these deposition subpoenas to counsel for the Subpoenaed Entities on March 2, 2020. Google serviced these Subpoenaed Entities on March 3, 2020. In its cover letter attaching the subpoenas, Google requested that the Subpoenaed Entities contact Google to discuss the timing of this deposition, with the goal of minimizing inconvenience to all parties. (*See, e.g.*, Ex. 1 at 1.)

[4]  This figure includes the cases that are currently stayed.

information relevant to the parties' claims and defenses, including information relevant to infringement, validity, and value of the asserted patents, damages, standing, and transfer of venue.

Although the subpoenas were issued by the Eastern District of Texas, they require compliance in the Southern District of New York, which is where the Subpoenaed Entities are headquartered and subject to service—and where the subpoenas command document production to occur. Pursuant to Rules 37(a)(2) and 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure, Google respectfully moves this Court to compel the Subpoenaed Entities to comply with Google's subpoenas and furnish a declaration stipulating to the authenticity of the produced documents.

## II.    BACKGROUND

This is Google's second effort to obtain discovery from the Subpoenaed Entities. Approximately six months ago, the Subpoenaed Entities refused to comply with similar subpoenas served in the District of Delaware.[5] Google then moved to compel in that district. Only after Google's motion was fully briefed and set for a hearing did plaintiff Uniloc 2017 finally admit that it had access to, and agree to produce a subset of, the documents that Google was seeking from the Subpoenaed Entities. (Declaration of Jonathan Tse ("Tse Decl.") ¶ 3.) Plaintiff Uniloc 2017 produced these documents after months of Google trying to obtain them. That subset of documents related exclusively to the issues of standing and venue, which the Eastern District of Texas had carved out from the other issues in this litigation and fast-tracked for discovery purposes. (Ex. 4.)

---

[5]    In response to the subpoenas served in the District of Delaware, the Subpoenaed Entities produced only the transcript of, and the exhibits to, a deposition of Mr. Erez Levy, a corporate designee for Uniloc USA and Unilox Lux (not for any of the Subpoenaed Entities), taken in the *Uniloc v. Apple* litigation in the Northern District of California (Case No. 3:18-cv-00360-WHA et al.). This deposition was taken on September 21, 2018 before any of the litigations against Google were initiated. This production failed to satisfy the requests in Google's subpoenas, which led Google to file a motion to compel in the District of Delaware.

In exchange for plaintiff Uniloc 2017's agreement to produce that subset of documents, Google agreed to withdraw that motion. (Tse Decl. ¶ 3.)

During negotiations on the earlier subpoenas, Google agreed to focus only on topics and requests regarding venue and standing and to defer its efforts to enforce compliance as to the remaining requests and topics, such as those concerning validity and damages, until the normal course of fact discovery in the underlying cases. (Ex. 4.) Google did this in an effort to focus on the issues that required immediate attention and to give the parties more time to discuss the issues that did not need to be addressed immediately. Because the Subpoenaed Parties objected to service in Delaware, contending that their principal place of business is in New York, (Ex. 5 at 5), Google withdrew its original subpoenas and served the current subpoenas in the Southern District of New York. These subpoenas contain many, if not most, of the same requests and topics that were previously served on the Subpoenaed Entities in Delaware.  Accordingly, the Subpoenaed Entities have known the types of documents that Google intended to seek for over six months.

The Subpoenaed Entities are closely associated with plaintiff Uniloc 2017. Fortress formed and incorporated plaintiff Uniloc 2017, as well as CF Uniloc, which appears to be plaintiff Uniloc 2017's parent company. Further, Fortress is a financier of plaintiff Uniloc 2017 and holds a security interest in the "proceeds" of plaintiff Uniloc 2017's patent portfolio, which (given that plaintiff Uniloc 2017 is a non-practicing entity whose patents generate proceeds primarily through litigation) means that Fortress has held a security interest in numerous lawsuits brought by various Uniloc-named entities. (Ex. 6 at 6–11.) The Subpoenaed Entities may have also been in negotiations with prior assignees to acquire the asserted patents before Uniloc Luxembourg ultimately acquired them. Google believes that Fortress, in its financing and acquisition roles, may

have performed or received analyses of the infringement, validity, and value of the asserted patents.

As explained in Google's motion to dismiss that is currently pending in the Eastern District of Texas, Fortress and CF Uniloc may have proprietary interests in the asserted patents and this litigation itself. (Ex. 6 at 6-11.) A raft of loan agreements connect plaintiff Uniloc 2017; Uniloc USA Holdings, LLC ("Uniloc USA"); Uniloc Luxembourg SA ("Uniloc Lux"); CF Uniloc; and Fortress Credit Co. LLC. These loan agreements have unbundled the property rights to the asserted patents and scattered those rights among the various entities.[6] (*See, e.g.*, Exs. 7-9.) Documents related to the asserted patents have likely been scattered among the various entities. Moreover, plaintiff Uniloc 2017 has repeatedly refused to confirm whether all of the documents that Google is seeking from the Subpoenaed Entities are in its possession, custody, and control. (Ex. 4; Ex. 10.) The Subpoenaed Entities surely possess documents and information to which plaintiff Uniloc 2017 does not have access, (*see, e.g.*, Ex. 11), and many of the documents that Google now seeks from the Subpoenaed Entities are inherently of an internal nature. Google's motion to dismiss is still pending and nothing prevents Google from seeking leave to amend its motion should Google discover information that further supports its motion.

The Subpoenaed Entities served their responses and objections on February 4. (*See, e.g.*, Exs. 12-14.) As with their objections and responses to the first round of subpoenas last year, the

---

[6]   Through the web of agreements among these entities, the property interests in the asserted patents have shifted as the Uniloc entities' corporate and capital structures have evolved. For example, even as late as October 2018, CF Uniloc and plaintiff Uniloc 2017 were shifting the property rights to the asserted patents. Although standing is not the main focus of this second round of subpoenas, it remains a disputed issue and within the proper scope of discovery here, as it is the subject of Google's motion to dismiss that is currently pending in the Eastern District of Texas. Moreover, standing often implicates a court's subject-matter jurisdiction, which is an issue that can be raised at any time.

Subpoenaed Entities here objected to every request and refused (each of the Subpoenaed Entities

doing so in almost exactly the same words) to produce any documents in response to Google's

requests. (*See* Exs. 12-14.) The Subpoenaed Entities also acknowledged the existence of non-

privileged documents responsive to Request Nos. 4–5, 8. 10, 17, and 23, but refused to produce

them.[7] (*See* Exs. 12-14.) In response to the other requests, *i.e.*, Request Nos. 1–3, 6–7, 11, 13–16,

18–21, and 24–25, the Subpoenaed Entities indicated, subject to their objections, that they have no

relevant, non-privileged documents or information and objected to the scope of the requests.[8] (*See*

Exs 12-14.) Further, the Subpoenaed Entities specifically directed Google to seek certain

categories of documents from plaintiff Uniloc 2017:  Fortress Investment Group indicated that

plaintiff Uniloc 2017 would possess documents responsive to Google's Request Nos. 3, 9, 10, 12,

17, 22, and 23 (*see* Ex. 12); Fortress Credit Co. LLC indicated that plaintiff Uniloc 2017 would

possess documents responsive to Google's Request Nos. 3, 10, 17, and 23 (*see* Ex. 13); and CF

Uniloc indicated that plaintiff Uniloc 2017 would possess documents responsive to Google's

Request Nos. 10, 17, and 23 (*see* Ex. 14). But plaintiff Uniloc 2017 has yet to produce all

documents and communications concerning licensing or settlement of all disputes involving the

asserted patents or otherwise confirm it has produced all such documents, which are responsive to

at least Request Nos. 12 and 23. Even if it had produced all such documents and communications,

Fortress and CF Uniloc likely have internal documents or communications as well as

---

[7]   Unlike Fortress Credit Co. LLC and CF Uniloc, Fortress Investment Group also acknowledged the existence of non-privileged documents responsive to Request Nos. 9, 12, and 22 but refused to produce them. (*See* Ex. 12.)

[8]   By the same token, unlike Fortress Investment Group, Fortress Credit Co. LLC and CF Uniloc indicated, subject to their objections, that they have no relevant, non-privileged documents or information and objected to the scope of the requests for Request Nos. 9, 12, and 22. (Ex. 13; Ex. 14.)

communications with other third parties, regarding the same subject matter that Uniloc 2017 may not have in its possession, custody, or control.

On February 12, the parties met and conferred on the Subpoenaed Entities' responses and objections. Google explained the relevance of each request for which the Subpoenaed Entities indicated that they were withholding non-privileged, responsive documents. Further, Google asked the Subpoenaed Entities to provide a privilege log to the extent they were withholding responsive documents that they contend are privileged. The Subpoenaed Entities stood by their written objections, refused to produce any documents at all, and failed to meaningfully meet and confer. They also would not commit to providing a privilege log or producing email communications.

On February 18, Google e-mailed the Subpoenaed Parties a detailed summary of the February 12 meet-and-confer. (Ex. 15.) In that summary, Google stated that if the Subpoenaed Entities did not produce documents and agree to provide testimony by February 21 or provide a privilege log for responsive documents being withheld on grounds of privilege, Google would understand the parties to have reached an impasse as of that date. (*Id.* at 6-7.) The Subpoenaed Entities responded on February 21, stating that they did not understand the relevance of the information Google sought (*id.* at 4-5), even though they have injected themselves into this litigation by having their employee, James Palmer, submit declarations supporting Uniloc 2017, by appointing its own employees as officers and managers of Uniloc 2017 and CF Uniloc, and by financing these litigations. They have also claimed that the requests are overbroad, despite the almost-two-hour meet-and-confer where Google explained in detail exactly what it was looking for from the Subpoenaed Entities and the relevance of each request. (*Id.*) Due to an intervening stay issued *sua sponte* in some of the cases at issue, one of which was the sole case for which counsel—who met and conferred with counsel for the Subpoenaed Entities—was representing

Google, the Subpoenaed Entities deemed Google's request that they produce the requested documents by February 21 to be "irrelevant" and requested a do-over meet and confer. (*Id.*) Despite Google's position that the parties had already met and conferred but were at an impasse on certain requests, Google agreed to another meet and confer on February 24. (*Id.* at 3-4.) Leading up to the second meet and confer, Google provided search terms and custodians for ESI discovery that counsel for the Subpoenaed Entities had requested. (*Id.*)

On February 24, 2020, counsel for Google and the Subpoenaed Entities met and conferred again, discussing the relevance of Google's Request Nos. 8–10, 12, and 23. The Subpoenaed Entities still did not commit to produce any documents. In an attempt to compromise, Google globally narrowed its definition of "Related Patents," and listed the patents that fall under the narrow definition. (Ex. 10 at 2-3.) Google further narrowed Request No. 9 to include only documents and communications regarding the asserted patents and related patents. (*Id.*) On February 27, the Subpoenaed Entities stated that they refuse to produce documents, claiming either that Uniloc 2017 has the responsive documents or that Google's requests were unwarranted and improper despite Google's explanations to the contrary. (*Id.* at 1-2.) Moreover, the Subpoenaed Entities refused to produce email communications—despite Google identifying search terms and potential custodians as requested—because "many thousands of email hits were returned" and blamed Google for its unwillingness to compensate the Subpoenaed Entities for producing email communications, even though the Subpoenaed Entities are related and interested parties to the underlying litigations. (*Id.* at 1.) The only documents that the Subpoenaed Entities said they would contemplate producing are documents that Google specifically identified from Uniloc 2017's production. (*Id.*) However, Google seeks more than just those documents referenced in Uniloc 2017's production.

### III.   LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure allows a party to issue a subpoena to command a nonparty to produce documents in its possession, custody, or control. Fed. R. Civ. P. 45. The scope of discovery via subpoena is the same as under Rules 26 and 34 of the Federal Rules of Civil Procedure. *See* 9A Charles Alan Wright et al., Federal Practice and Procedure § 2452 (3d ed. 2019) (citing cases). A party may obtain discovery of any non-privileged matter relevant to any claims or defenses. Fed. R. Civ. P. 26(b)(1). "It is well recognized that the federal rules allow broad and liberal discovery."*Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999); *see also Edward D. Ioli Trust v. Avigilon Corp.*, No. 2:10-CV-605-JRG, 2012 WL 5830711, at *1 (E.D. Tex. Nov. 16, 2012) (explaining that the rules of discovery receive "broad and liberal application").

Rule 26 limits discovery where its burden outweighs its likely benefit, taking into account the needs of the case, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving those issues. Fed. R. Civ. P. 26(b)(1). "Courts in this district have applied a 'flexible standard of reasonableness and good cause' in determining whether to grant a party's expedited discovery request." *Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (quoting *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326–27 (S.D.N.Y. 2007)); *see also Lonchar v. Thomas*, 517 U.S. 314, 337 n.1 (1996) (Rehnquist, J., concurring) (noting that district courts have broad "discretion to . . . authorize discovery . . . and generally expedite proceedings"); *Kone Corp. v. ThyssenKrupp USA, Inc.*, C.A. No. 11-465-LPS-CJB, 2011 WL 4478477, at *3 (D. Del. Sept. 26, 2011) ("[C]ourts have broad discretion to manage the discovery process, and can accelerate or otherwise alter the timing and sequence of discovery.").

Rule 37 provides that "[o]n notice to other parties and all affected persons, a party may

move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The proper venue

in which to file a motion to compel a nonparty to comply with a subpoena is "the district where

compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). Since the subpoenas require the

Subpoenaed Entities to produce documents in the Southern District of New York, venue is proper.

## IV.    ARGUMENT

To narrow the issues and to further minimize any alleged inconvenience to the Subpoenaed

Entities, Google limits this Motion to Request Nos. 8, 9, 10, 12, and 23, as narrowed in Google's

correspondence with the Subpoenaed Entities. Further, for all requests to which the Subpoenaed

Entities have indicated that they are withholding responsive documents on grounds of attorney–

client privilege, Google moves to compel the Subpoenaed Entities to provide a privilege log. In

determining whether to enforce a subpoena, courts balance the relevance of the discovery sought,

the requesting party's need, and the potential hardship to the nonparty. *Heat & Control, Inc. v.*

*Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986). Google will address these factors in

turn.

### A.    The Requested Discovery Is Relevant to the Validity and Value of the Asserted Patents, Damages, Standing, and Transfer of Venue.

Relevant information includes "any matter that bears on, or that reasonably could lead to

other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc.*

*v. Sanders*, 437 U.S. 340, 351 (1978). "Where there is doubt over relevance, [Rule 26(b)(1)]

indicates that the court should be permissive." *Heat & Control*, 785 F.2d at 1024. "[W]hen the

material sought is minimally relevant the burden is on the party opposing discovery to show that

it is not relevant." 8 Charles Alan Wright et al., Federal Practice and Procedure § 2008 (3d ed.

2019) (citing cases).

As explained above, the Subpoenaed Entities are interested nonparties closely related to

plaintiff Uniloc 2017. Fortress made plain its interest in this litigation when it furnished declarations from Fortress's managing director in the Intellectual Property Finance Group to aid Uniloc 2017's opposition to Google's motion to dismiss. *See, e.g.*, -553 Case, Dkts. 33-8, 33-9.[9] Uniloc 2017's reliance on these declarations to oppose Google's motion to dismiss has made Fortress *directly* relevant to Uniloc's claims of standing and confirms that Fortress possesses relevant, discoverable information.

Google's Request No. 8 seeks documents and communications among the Subpoenaed Entities and with any other party regarding the litigation between Uniloc 2017 and Google, litigation involving any of the asserted patents or related patents, or any potential patent litigation against Google. (Ex. 1 at 8; Ex. 2 at 8; Ex. 3 at 8.) This request is relevant, for example, to analysis that the Subpoenaed Parties have conducted on the asserted patents (which may go to non-infringement and invalidity), the motivations behind this wave of litigation against Google (which may go to the value of the asserted patents), the locations of relevant witnesses and documents (which goes to venue), and the Subpoenaed Entities' control over plaintiff Uniloc 2017 (which goes to standing). In addition, information related to Fortress's meetings with Uniloc executives in particular, including the duration, frequency, and location of those meetings, could go to venue by establishing that the Northern District of California is a more convenient forum for third parties

---

[9]   The broader context is as follows:  In December 2014, Fortress entered into loan agreements with Uniloc Lux and Uniloc USA to finance the patent-assertion activities of various Uniloc entities.  (Ex. 6 at 6; Ex. 7; Ex. 8; Ex. 9.) The loan agreements gave Fortress an irrevocable patent license that included the right to grant sublicenses that would automatically revert to Fortress upon the occurrence of certain events, including any event of default. (Ex. 6 at 6-11.) Public documents show that defaults in fact occurred. (*Id.* at 8-9.) As explained in Google's motion to dismiss, these defaults have stripped Plaintiff Uniloc 2017 of standing to pursue this litigation. (*See id.* at 6-11.) In response to this argument, Plaintiff Uniloc 2017 appended declarations from Fortress employees to several of its filings. *See, e.g.*, *Uniloc 2017 LLC v. Google LLC*, No. 2:18-cv-553 ("-553 Case"), Dkt. 33-8, 33-9 (E.D. Tex.).

than the Eastern District of Texas.

Request No. 9 seeks documents and communications regarding the sale, transfer, assignment, or licensing of the asserted patents, or any patent portfolio held by any Uniloc entity. (Ex. 1 at 8; Ex. 2 at 8; Ex. 3 at 8.) This request is relevant to the issues of the value of the asserted patents and damages (the amount to which these sales/transfers/assignments/licenses the Subpoenaed Entities agree), the infringement, validity, and value of the asserted patents (based on any analysis done on the asserted patents prior to any sale/transfer/assignment/license), and the reasons for the patents' acquisition and assertion (which goes to the value of the asserted patents).

Request No. 10 seeks documents related to the conveyance of any right to an asserted patent or related patent, including rights related to the enforcement of or litigation involving such patents. (Ex. 1 at 8; Ex. 2 at 8; Ex. 3 at 8.) This request goes to standing (*e.g.*, the extent to which interests in the patents are owned or controlled by parties other than plaintiff Uniloc 2017) and the financial rationale, from the perspective of plaintiff Uniloc 2017's corporate parents, for this litigation against Google.  Because Fortress is a signatory to many agreements involving plaintiff Uniloc 2017 and the other entities that have held or currently hold interests in the asserted patents, the circumstances surrounding *its* reasons for entering into such agreements—distinct from the reasons of the Uniloc entities—are highly relevant for, among other purposes, determining what rights to the patents are held by whom and the value that the Subpoenaed Entities place on the asserted patents.

Request No. 12 seeks documents and communications regarding the licensing of an asserted patent or related patent or the settlement of any dispute regarding them. (Ex. 1 at 9; Ex. 2 at 9; Ex. 3 at 9.) These documents and communications may be relevant to damages and the value of the asserted patents based on what was exchanged for any licenses to the asserted or related

patents, the infringement or validity of the asserted or related patents based on any analysis that the Subpoenaed Entities or others conducted in negotiating any such license, and the control exercised by the Subpoenaed Parties over this litigation as it relates to standing.

Request No. 23 seeks information regarding the entities and individuals with a financial interest in the outcome of the Uniloc 2017–Google litigation, including the type, nature, percentage, and amount of each interest. (Ex. 1 at 11; Ex. 2 at 11; Ex. 3 at 12.) This request is relevant to damages and the asserted patents' value, because any financial interest in this litigation may evidence motivation to assert such patents, the motivation for this litigation against Google, and the control exercised by the Subpoenaed Parties over plaintiff Uniloc 2017 and this litigation generally, which relates to standing. The entities and individuals with a financial interest in the Uniloc 2017-Google litigations are also relevant to Google's motion to transfer venue from the Eastern District of Texas to the Northern District of California, because the locations of such entities or individuals may further support Google's motion. *See, e.g.*, *Uniloc 2017 LLC v. Google LLC*, 2:18-cv-553-JRG, Dkt. 72 (E.D. Tex. Oct. 18, 2019); *Malone v. Commonwealth Edison Co.*, 2 F. Supp. 2d 545, 547 (S.D.N.Y. 1998) (ordering transfer because, among other factors, "all of the relevant documents, evidence and witnesses will be found" in the transferee district); *Purdy v. Munden*, 356 F. Supp. 2d 658, 660 (E.D. Tex. 2005) (concluding that "the private factors tilt heavily in favor of transfer" because the relevant witnesses and evidence was located primarily in a different district). For example, many of Fortress's employees are or were officers and managers of Uniloc 2017 and CF Uniloc, including James Palmer, the Fortress employee who submitted a declaration in this case, are based in the Northern District of California, which support Google's motion to transfer.

**B.**      **Google Needs Documents and Testimony From the Subpoenaed Entities Because It Cannot Obtain the Requested Information Elsewhere**

The second factor in whether to enforce a subpoena is "the requesting party's need" for the information sought. *Heat & Control*, 785 F.2d at 1024. This factor favors enforcement when the information sought is in the exclusive possession of the subpoenaed party. *See, e.g.*, *In re Subpoena to Non-Party OPI Products, Inc. Mycone Dental Supply Co v. Creative Nail Design, Inc.*, No. 3:12-CV-747-RS, 2014 WL 12610196, at *2 (C.D. Cal. Jan. 2, 2014) (concluding that the requesting party "needs to get the information from OPI because OPI is the only entity that has access to it"). In short, "[n]eed is enhanced when information is uniquely available from the party from whom it is sought." *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987).

The Subpoenaed Entities contend Google should seek the requested information from plaintiff Uniloc 2017. (Ex. 10.) But Google has already done so—with limited success. Moreover, this objection is conclusory and unsupported, because it assumes, without explanation, that plaintiff Uniloc 2017 has possession, custody, and control of the information Google seeks here, even though most requests make no reference to Uniloc 2017 whatsoever. Whether this assumption is true, of course, cannot be ascertained without substantive, good-faith responses to the subpoenas. Google does not know if plaintiff Uniloc 2017 has possession, custody, and control of all responsive documents; the Subpoenaed Entities refuse to confirm that plaintiff Uniloc 2017 does in fact have possession, custody, and control of all responsive information.

Any information that Google received from plaintiff Uniloc 2017 would (assuming that the relevant transactions occurred at arm's length, which is itself an open question that the subpoenas are intended to help answer) tell only half the story. The other half of the story, which relates to the Subpoenaed Entities, would be exclusively in their possession. There are likely other stories to be told—stories that plaintiff Uniloc 2017 admittedly would not know. Plaintiff Uniloc 2017

14

claims not to be privy, for example, to internal Fortress documents and communications evaluating whether to invest in plaintiff Uniloc 2017 or its affiliates, and plaintiff Uniloc 2017 has objected to a number Google's document requests regarding Fortress on the grounds that these requests seek third-party information. (*See, e.g.*, Ex. 11 at pp. 2-4, 8-9, 13-15 (Uniloc 2017's objections and responses to RFPs 1, 2, 6, 19, 33, 34, and 36).)

Related to Google's Request No. 9, for example, the Subpoenaed Entities may have negotiated acquiring asserted patents from prior assignees of the asserted patents Even though the Subpoenaed Entities ultimately did not acquire those patents from any prior assignee of the asserted patents, and the patents were acquired instead by plaintiff Uniloc 2017, who then asserted them against Google here, to the extent any negotiations took place, that information would be in the Subpoenaed Entities' possession, custody and control, not Uniloc 2017.

Related to Request No. 10, there is no reason that plaintiff Uniloc 2017 would possess or have access to information regarding conveyances negotiated by the Subpoenaed Entities, either among themselves or with third parties, and the Subpoenaed Entities refuse to confirm that Uniloc 2017 has all this information. Related to Request No. 12, there is no reason that Uniloc 2017 would have access to the Subpoenaed Entities' communications on such matters if the communications did not involve Uniloc 2017, and the Subpoenaed Entities refused to confirm that Uniloc 2017 has all of this information. Related to Request No. 23, plaintiff Uniloc 2017 has already expressly disclaimed knowledge of CF Uniloc's ownership (Tse Decl. ¶ 4), for example, and therefore cannot identify the stakeholders in that entity who have a financial interest in plaintiff Uniloc 2017's enforcement activities. There is no reason, moreover, to presume that plaintiff Uniloc 2017 has any more such information regarding the ownership of Fortress.

During the meet-and-confer, the Subpoenaed Entities attempted to use their status as "third

parties" to resist discovery, yet they did so while simultaneously leveraging information about plaintiff Uniloc 2017's discovery strategy—for example, information on Uniloc 2017's document productions, such as the contents of those productions. The Subpoenaed Entities want to have it both ways. On one hand, they resist discovery by claiming that the document requests in Google's subpoenas are overbroad and not proportional to the discovery normally permitted on third parties (despite Google's repeated explanation of the specific information it seeks and the relevance of that information). But on the other hand, they attempt to use information about plaintiff Uniloc 2017's document productions to delay compliance with the subpoenas, making clear that they are standing shoulder-to-shoulder with plaintiff Uniloc 2017 and coordinating with it in responding to the subpoenas.[10]

### C.   There Are No Credible Claims Of Hardship Here, And Google Is Prepared To Be Flexible To Minimize Inconvenience

The last factor considered in determining whether to enforce a subpoena is "the potential hardship of the party subject to the subpoena." *Heat & Control*, 785 F.2d at 1024. A party resisting discovery must do more than make "barebones claims of hardship"; such claims "are inadequate." *DatCard Sys., Inc. v. PacsGear, Inc.*, 2011 WL 2491515, at *2 (D. Minn. Apr. 25, 2011).

The Subpoenaed Entities, all represented by common counsel, are stonewalling. The Subpoenaed Entities make only generic, exaggerated claims of the hardship they would face in complying with Google's discovery requests, and they make no effort to identify with particularity

---

[10]   The Subpoenaed Entities stated that they are only "willing to consider reasonable requests for particularized documents if Google can specifically point to documents that are explicitly described in Uniloc 2017's productions but that Uniloc 2017 has verified that it does not have access to. Otherwise, . . . Google's requests to Fortress amount to an improper fishing expedition." (Ex. 10.) The overt collaboration between the Subpoenaed Entities and Plaintiff Uniloc 2017 in this matter only underscores the need for discovery regarding the relationships among these entities.

why such hardship would arise or what it would entail. (Exs. 11-13.) *See Datcard*, 2011 WL 2491515, at \*2; *Plant Genetic Sys., N.V. v. Northrup King Co., Inc.*, 6 F. Supp. 2d 859, 862 (E.D. Mo. 1998) (concluding that a third party would "not be unduly burdened by compliance with the . . . subpoenas" where it had "done little more than make the bare assertion that it is burdensome for it to comply").

Complying with its discovery requests would entail no genuine hardship. For one thing, the same counsel who represents all of the Subpoenaed Entities also currently represents Uniloc entities, including plaintiff Uniloc 2017, in litigation in California, including in cases asserting some of the same patents.[11] Moreover, the Subpoenaed Entities asserted that Fortress Investment Group's legal and compliance department primarily controlled corporate business records for the Subpoenaed Entities and is responsible for "coordinating the collection and production of records and data for purposes of responding to litigation discovery requests" for the Subpoenaed Entities. (Ex. 5 at 5-6.) The fact that Fortress has submitted declarations to support plaintiff Uniloc 2017's bid for standing shows the hand-in-glove relationship between these entities and undercuts any suggestion that Fortress would suffer hardship in responding to Google's requests.

In order to minimize any alleged hardship, Google has also narrowed the requests on which it seeks compliance and narrowed the scope of those requests as they relate to "Related Patents," including by identifying the specific patents and applications that fall into this definition. Google has also significantly reduced the number of document requests at issue. And Google has proposed

---

[11]    *See, e.g.*, *Uniloc 2017 LLC v. Microsoft Corp.*, No. 8:19-cv-00781 (C.D. Cal.); *Uniloc 2017 LLC v. Roku, Inc.*, No. 8:19-cv-00295 (C.D. Cal.); *Uniloc 2017, LLC v. Microsoft Corp.*, No. 8:19-cv-00196 (C.D. Cal.); *Uniloc 2017 LLC v. Microsoft Corp.*, No. 8:18-cv-02053 (C.D. Cal.); *Uniloc 2017 LLC v. Netflix, Inc.*, No. 8:18-cv-02055 (C.D. Cal.); *Uniloc 2017 LLC v. Am. Broadcasting Co., Inc.*, No. 8:18-cv-02056 (C.D. Cal.); *Uniloc 2017 LLC v. ESPN, Inc.*, No. 8:18-cv-02057 (C.D. Cal.); *Cisco Sys., Inc. v. Uniloc USA, Inc.*, No. 3:18-cv-04991 (N.D. Cal.).

search terms and potential custodians for email communications, just as the Subpoenaed Entities

requested, and remains willing to narrow the search terms further. The unsupported, generic claims

of hardship by the Subpoenaed Entities fall flat.

## V.       CONCLUSION

For all of these reasons, Google respectfully moves the Court to compel the Subpoenaed

Entities to produce, on an expedited basis in view of the close of discovery on March 30, 2020:

the documents requested by the subpoenas, as narrowed herein; a declaration attesting to the

authenticity of the produced documents; and a privilege log identifying any responsive documents

being withheld on grounds of privilege.

| Dated: March 4, 2020 | Respectfully submitted, |
|---|---|
| | */s/ Joseph Milowic III* |
| | Michael E. Jones<br>Texas State Bar No. 10929400<br>mikejones@potterminton.com<br>Earl Glenn Thames, Jr.<br>Texas State Bar No. 00785097<br>glennthames@potterminton.com<br>Patrick C. Clutter<br>Texas State Bar No. 24036374<br>patrickclutter@potterminton.com<br>POTTER MINTON, P.C.<br>110 N. College Ave., Suite 500<br>Tyler, Texas 75702<br>Tel: (903) 597-8311<br>Fax: (903) 593-0846<br><br>Joseph Milowic III<br>New York Bar No. 4,622,221<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Tel: (212) 849-7225<br>Fax: (212) 849-7100<br>josephmilowic@quinnemanuel.com<br><br>*Attorneys for Google LLC* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that following parties are being served with a true and correct copy of this

document via CM/ECF and/or electronic mail on March 4, 2020.

| | |
|---|---|
| M. Elizabeth Day<br>eday@feinday.com<br>Marc Belloli<br>mbelloli@feinday.com<br>Jeremiah A. Armstrong<br>jarmstrong@feinday.com<br>FEINBERG DAY KRAMER ALBERTI LIM<br>TONKOVICH & BELLOLI LLP<br>1600 El Camino Real, Suite 280<br>Menlo Park, CA 94025<br>Tel: 650 618-4360<br>Fax: 650 618-4368<br><br>*Attorneys for Fortress Investment Group*<br>*LLC, Fortress Credit Co. LLC, and CF*<br>*Uniloc Holdings LLC* | |

*/s/ Joseph Milowic III*
Joseph Milowic III